**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

THE ESTATE OF ELIZABETH PETERS, *et al.*,

Plaintiffs,

v.

FEDERAL EXPRESS CORPORATION

Defendant.

Case No. 2:25-cv-2440-DDC-JBW

**Oral Argument Requested**

# PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

FedEx fundamentally misunderstands Plaintiffs' punitive damage claim and therefore argues that it's spurious. FedEx *thinks* the punitive damages claim is built on the testimony of other delivery drivers. But that's wrong. Plaintiffs' punitive damage claim is founded on what FedEx knew or should have known. The evidence FedEx has produced shows that Alexander Bullock (the driver) sped every single day, and FedEx was intentionally blind or indifferent to his reckless driving. While the evidence supports discovery on the punitive damages issue, this Court need only look at the allegations of the Amended Complaint and hold that Plaintiffs' punitive damage claim is not spurious.

## I. Specific Relief Sought

Plaintiffs requested certain financial documents as part of their punitive damage claim in RFP Nos. 77, 78, 79, 80, 81, 82, 83, 84, and 89.[1] FedEx seeks a protective order under Fed. R. Civ. P. 26(c) to prevent the production of FedEx's financial documents.

[1] These requests were included in Plaintiffs' Second and Third Requests for Production. The requests and responses are attached as **Exhibit 1**.

Plaintiffs ask the Court to deny FedEx's motion, and order FedEx to produce all financial documents requested within 10 days of its Order.

## II. Nature of the Matter Before the Court

Plaintiffs need the financial documents to demonstrate that FedEx profited from its wrongful conduct. Kansas substantive law applies in this diversity claim. And K.S.A. § 60-3701 provides the scope of punitive damage awards, which includes a potential award of "1½ times the amount of profit which the defendant gained or is expected to gain as a result of the defendant's misconduct."[2] This is a serious case: a woman died, and FedEx fired the responsible driver. Plaintiffs are seeking punitive damages based on what FedEx knew or should have known about that driver before the fatal crash.

## III. Statement of Key Facts For This Dispute

"Punitive damages are sought for FedEx's willful and wanton conduct in allowing and encouraging their drivers, including Alexander Bullock, to create unsafe and dangerous road conditions by speeding and ignoring traffic rules."[3] The Court entered the parties' agreed-upon Protective Order, which allows for the designation and protection of Confidential documents.[4] On December 23, 2025, and January 15, 2026, Plaintiffs served their second and third requests for production to FedEx.[5] The parties have had a prior discovery dispute in which the Court required FedEx to supplement its responses and

[2] K.S.A. § 60-3701(f).

[3] Plaintiffs' Amended Complaint (Dkt. 9) at ¶ 124.

[4] *See* Protective Order. Dkt. 23.

[5] *See* Certificates of Service for Second and Third RFPs. Dkts. 26 and 29.

production.[6] On March 31, 2026, the Court set the current briefing schedule.[7] Discovery closes July 10, 2026.[8] Dispositive Motions are not due until August 28, 2026.[9]

## IV. Argument and Authorities

The moving party bears the burden of demonstrating good cause for a protective order.[10] "To establish good cause, the moving party must offer 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'"[11] "[A] court may issue a protective order only if the moving party demonstrates that the basis for the protective order falls within one of the specific categories enumerated in the Rule, *i.e.* that the requested order is necessary to protect the party from 'annoyance, embarrassment, oppression, or undue burden or expense.'"[12] FedEx's motion should fail because FedEx doesn't identify the category of protection it's seeking. But FedEx's motion also fails substantively and procedurally because Plaintiffs' claim is not spurious.

### A. The Evidence Shows FedEx Was Indifferent To or Ratified Bullock's Reckless Conduct.

FedEx fundamentally misunderstands Plaintiffs' punitive damages claim. FedEx appears to believe that the foundation of Plaintiffs' punitive damages claim is that other

---

[6] *See* January 29, 2026 Discovery Hearing Text Order. Dkt. 40.

[7] *See* March 31, 2026 Discovery Conference Order. Dkt. 59.

[8] *See* Scheduling Order. Dkt. 19.

[9] *Id.*

[10] *Consumer Fin. Prot. Bureau v. Integrity Advance, LLC*, No. 21-MC-206-DDC-TJJ, 2022 WL 2791173, at *3 (D. Kan. July 15, 2022).

[11] *Id.* (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).

[12] *Id.* (citing *ICE Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135-JAR, 2007 WL 1652056, at *3 (D. Kan. June 6, 2007) (quoting Fed. R. Civ. P. 26(c))).

delivery drivers knew Alexander Bullock was a reckless driver. FedEx then argues that because these other drivers could not positively identify Mr. Bullock as the driver, Plaintiffs' claims must fail. But this misunderstands Plaintiffs' claim.

The Amended Complaint alleges Bullock was speeding in the crash.[13] Based on FedEx's ability to track and monitor the FedEx Van, FedEx knew that Bullock had a pattern and practice of speeding and reckless driving.[14] FedEx either knew or should have known of the danger of entrusting Bullock with the FedEx van, and FedEx was indifferent to or recklessly disregarded the danger by allowing Bullock to continue to drive.[15] Plaintiffs allege that these acts and omissions, as well as FedEx's lack of supervision and failure to correct Bullock, constituted wanton conduct.[16]

Allegations of indifference or reckless disregard are enough to successfully support a claim for punitive damages. In 2024, Judge Crabtree held that a plaintiff's punitive damage claim could survive a motion to dismiss with similar arguments as FedEx:

> Plaintiffs allege that decedent suffered an avoidable fall because defendants "knew that their conscious disregard to provide adequate staff; properly capitalize Facility, train, and/or supervise their ... employees during 2020 and 2021 created a high degree of probability of injury to residents," including decedent. Plaintiffs further allege that "defendants showed a complete indifference to, or conscious disregard, for the safety of others" when they failed to properly staff, fund, and train employees.
>
> These pleadings adequately allege that defendants acted wantonly—that is, that defendants realized "the imminence of danger" in the form of harm to residents, yet understaffed and underfunded the Facility, recklessly disregarding or acting with "complete indifference to the probable

[13] Plaintiffs' Amended Complaint (Dkt. 9) at ¶ 113.

[14] *Id.* at ¶ 117.

[15] *Id.* ¶¶ 120 – 121.

[16] *Id.* ¶¶ 122 – 124.

consequences of its conduct."[17]

This and other cases support the imposition of punitive damage against FedEx if it recklessly disregarded or acted with indifference to the potential harm.

### 1. FedEx Was Not Monitoring Its Drivers and Was Ignoring Warnings About the Danger.

The document and deposition evidence supports these allegations. It's FedEx's policy to monitor drivers' speed and behavior through in-cab video cameras, which are serviced by a third-party company called Nauto.[18] The system is supposed to notify FedEx managers via email whenever a driver violates a FedEx safety rule.[19] For example, when a driver exceeds the speed limit by five mph, the Nauto system is triggered, the camera starts recording, and the managers *should be* notified.[20] The violations can include speed, distracted driving, hard braking, and collisions.[21]

Nauto is essentially a carrot-and-stick for FedEx. The stick is to notify managers of violations so they can correct the driver. The carrot is to motivate the driver to comply with policies to avoid management's corrections. But if Nauto isn't working, which it wasn't here, there's no carrot to encourage compliance and no stick to correct violations.

Alexander Bullock's direct manager, Aaron Tennant, testified that only 40% of the Garden City vans ever had working Nauto cameras.[22] Meaning, 60% of the cameras were

---

[17] *Aiken v. Assurance Health Sys. LLC*, No. 22-2385-DDC-ADM, 2024 WL 961171, at *12 (D. Kan. Mar. 6, 2024).

[18] Toby Miller Deposition at 37:20-38:25, attached as **Exhibit 2.**

[19] *Id.*

[20] *Id.* at 42:11-43:10.

[21] *Id.* at 38:17-25.

[22] Aaron Tennant Deposition at 43:15-45:4, attached as **Exhibit 3**.

inoperable. At times, that number was as high as 90% of cameras being inoperable.[23] Alexander Bullock never once drove a FedEx van with a working Nauto camera.[24]




Q. Did Alexander Bullock ever drive, to your knowledge, a FedEx van with a working camera while you were the operations manager?
A. No.
Q. He never did?
A. Huh-uh.
Q. Is that problematic?
A. Yes.
Q. Why?
A. Because I don't have a daily -- I don't have a daily feedback on what he's doing every day.

Aaron Tennant testified that he repeatedly raised the issue of the Nauto camera problems with three separate levels of management monthly, and management never helped resolve the issue.[25]

Not only did management ignore Aaron Tennant's requests to fix the Nauto issue, Aaron Tennant's supervisor, Toby Miller, testified that he had most of his Nauto email notifications turned off because it "would have been way too many" notifications if he received an email for every driver violation.[26]




Q About how many emails would you get a day for 80 drivers?
A I only had collisions set up for notifications, so I didn't get -- if I would have got all of the notifications, that would have been way too many.

[23] *Id.*

[24] *Id.* at 47:6-16.

[25] *Id.* at 53:3-55:21.

[26] Miller Depo. at 40:9-25.

Aaron Tennant testified that the primary purpose of the Nauto system was "[t]o evaluate safety concerns and get them addressed, and if they don't get fixed, move to termination, because there – it's a safety and can become a legal issue if it doesn't get fixed."[27] Therefore, the purpose of Nauto is to evaluate safety, address issues, and if the issues are not fixed, to proceed with termination.

Toby Miller and Aaron Tennant (both Bullock's former FedEx supervisors) also testified about the number of speeding violations that would trigger termination or removal from the road. Aaron Tennant testified that if a driver was going 10 mph over the speed limit on multiple days, then the driver would be placed on a performance improvement plan.[28] If the driver continued to have speeding events, the driver would be terminated.[29] Toby Miller testified that a driver would be removed from the road if he was going 10 mph over the speed limit day after day.[30]

### 2. The GPS Data Shows Bullock's Speeding Merited Termination Day after Day.

If the FedEx supervisors would have terminated Bullock if he was a habitual speeder, then Bullock's driving history shows whether FedEx was indifferent to or implicitly ratified Bullock's conduct. We're able to analyze Bullock's speed through the data we've collected from his handheld device that the drivers use to scan packages. The scanners provide near-constant GPS data that shows location and speed. That data is uploaded into the cloud at the end of every day and is saved and accessible by FedEx. <u>This</u>

---

[27] Tennat Depo. at 47:17-48:1

[28] *Id.* at 66:24-68:5.

[29] *Id.*

[30] Miller Depo. at 45:6-15.

means that FedEx had the ability to monitor Alexander Bullock's speed but didn't. We know Alexander Bullock was speeding every day because FedEx produced the GPS data showing he was speeding. FedEx knew or should have known Bullock was speeding. And if they claim they never checked the GPS data, then that was a conscious disregard of the potential harm of speeding, and it demonstrates wantonness.

So far, our expert has completed his analysis of the March 2025 GPS data. FedEx produced seven days of driving data from March 2025. On March 3rd, Bullock had nine speeding events at least 10mph over the speed limit. On March 5th and 6th, he had six events at least 10mph over each day. On March 7th, he had 10 events at least 10mph over. On March 10th, he had six events at least 10mph over. And on March 31st, he had seven events at least 10mph over.[31] We are still analyzing five additional months of data, but each day of the other months reflects the same speeding as in March.

The testimony from the FedEx managers reveals three crucial points: (1) FedEx relied on the Nauto system to monitor the safety of its drivers; (2) FedEx could not monitor Bullock's driving because his Nauto system never worked; and (3) if Bullock had been known to speed 10 mph over the speed limit multiple days he would have been terminated or removed from the road.

And the GPS data shows Bullock was habitually and routinely speeding. If FedEx had been monitoring his speed, then, according to his supervisors, he would have been removed from the road long before his fatal crash with Elizabeth Peters. Plaintiffs need the financial documents about the profits of FedEx Express and the Garden City Branch to

[31] The data in this paragraph can be found on **Exhibit 4**, which is a spreadsheet created by our expert Larry Bray based on the GPS data produced by FedEx.

connect FedEx's profits with FedEx wrongful conduct—wrongful conduct that is demonstrated by the evidence in the case.

**B. The Court Should Only Examine the Allegations and Not the Evidence.**

The document and deposition evidence supports Plaintiffs' allegations that FedEx disregarded the danger, which amounts to wanton conduct. Plaintiffs' punitive damage claim is therefore not spurious. But, to determine spurious, the cases say that the Court should look only at the allegations in the Amended Complaint and not at the evidence. Both cases cited by FedEx show that courts look only at the allegations in the Complaint and not the evidence to determine whether a claim is "not spurious."

In *Heartland*, the Court held that it "need only find that the claims for punitive damage are not spurious for discovery to proceed."[32] The Court looked at the plaintiffs' allegations of tortious interference and civil conspiracy and held they were not spurious because "[p]unitive damage are recoverable for claims styled in this manner."[33] Similarly, in *Pipeline Productions*, the analysis was even clearer: "In determining whether plaintiffs' punitive damage claim is spurious, the Court looks to whether plaintiffs have made sufficient allegations—short of those needed to establish a *prima facie* case—to support a claim for punitive damage under the applicable law."[34]

A 2024 case with similar facts and arguments provides a helpful roadmap for the Court. In *Gray v. Conner Industries*, a 2021 personal injury and wrongful death suit, the

---

[32] *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164 MLBDWB, 2007 WL 950282, at *12 (D. Kan. Mar. 26, 2007) (citing *Mid Continent Cabinetry*, 130 F.R.D. at 152).

[33] *Id.*

[34] *Pipeline Prods., Inc. v. Madison Companies*, LLC, No. 15-4890-KHV, 2019 WL 1318288, at *4 (D. Kan. Mar. 22, 2019), *order vacated in part*, No. CV 15-4890-KHV, 2019 WL 6358250 (D. Kan. May 15, 2019).

plaintiff alleged punitive damages and sought the defendant's financial information.[35] The defendant raised similar "spurious" objections.[36] Judge Birzer said, "Plaintiff is not required to demonstrate a *prima facie* case at this juncture, and Defendant's legal arguments regarding the viability of the punitive damage claim is an issue for summary judgment and not for this Court."[37] Judge Birzer ultimately held that the parties' protective order alleviated any risk of harm by disclosure of the financial information, and she allowed the financial discovery to proceed. [38]

In summary, whether a punitive damage claim is spurious is a test of the allegations and not the evidence. Plaintiffs have sufficiently stated a claim for punitive damages. This Court should deny FedEx's motion and order the production of financial documents, which would be protected by the Protective Order (Dkt. 23) already in place.

## V. Conclusion

Even though there is sufficient evidence to support Plaintiffs' punitive damages claim, the test for "not spurious" is a test of the allegations and not the evidence. This Court should examine Plaintiffs' Amended Complaint, determine that Plaintiffs' claim makes adequate allegations in support of punitive damages, and order FedEx to produce responsive documents.

---

[35] *Gray v. Conner Indus., Inc.*, No. 20-1037-TC-GEB, 2021 WL 5298667, at *6 (D. Kan. Nov. 15, 2021).

[36] *Id.*

[37] *Id.*

[38] *Id.*

Respectfully submitted,

*/s/ Bryce Langford*
David J. Rebein, Kansas #10476
Bryce Langford, Kansas #27548
Pablo Mose, Kansas #27532
**REBEIN BROTHERS, PA**
TRIAL LAWYERS
810 Frontview
Dodge City, Kansas 67801
620.227.8126
Dave@rbr3.com
Bryce@rbr3.com
Pablo@rbr3.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 22nd day of April, 2026, he filed the attached with Court, which sent notice to all counsel of record.

*/s/ Bryce Langford*
*Attorney for Plaintiffs*