**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| THE ESTATE OF ELIZABETH PETERS, deceased, by and through its duly appointed special administrator, Frank Peters, <br><br> and <br><br> FRANK PETERS, individually and on behalf of the heirs of Elizabeth Peters, <br><br>        Plaintiffs, <br><br> v. <br><br> FEDERAL EXPRESS CORPORATION, <br><br>        Defendant. | Case No. 25-cv-2440-DDC-JBW |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Federal Express Corporation's Motion for Protective Order (Dkt. 60). Defendant requests the Court enter a protective order, pursuant to Fed. R. Civ. P. 26(c), prohibiting discovery of its financial statements and documents sought by nine of Plaintiffs' requests for production ("RFPs"). Plaintiffs argue these RFPs are relevant and appropriately tailored to their non-spurious claim for punitive damages and request that Defendant be ordered to produce documents responsive to these RFPs. As explained below, Defendant's motion is granted in part and denied in part.

I.      **Background**

This case arises from a motor vehicle collision between Elizabeth Peters and a van driven by Defendant's employee, Alexander Bullock ("FedEx Driver"), at a rural intersection in Gray County, Kansas. Plaintiffs are the Estate of Elizabeth Peters, by and through Frank Peters as its duly appointed special administrator, and Frank Peters, individually and on behalf of the heirs of

Elizabeth Peters. Plaintiffs' Amended Complaint (Dkt. 9) asserts the following claims against Defendant: Vicarious Liability/Respondeat Superior (Count I), Negligence (Count II), and Punitive Damages (Count III). The Estate seeks recovery of all damages and remedies available as a result of the decedent's conscious physical and emotional pain and suffering, funeral expenses, past medical expenses, past and future economic damages, and past and future noneconomic damages. Frank Peters, individually and on behalf of the heirs of Elizabeth Peters, seeks all damages allowed under the Kansas Wrongful Death Act. Plaintiffs' Amended Complaint asserts a claim for punitive damages against Defendant based on the alleged reckless driving of the FedEx Driver before the accident.

On December 23, 2025, Plaintiffs served their second set of RFPs on Defendant. RFPs 77 through 84 ask Defendant to produce financial statements and information from Federal Express Corporation, FedEx Express,[1] and the Garden City station.[2] Specifically, RFPs 77 to 84 seek production of the following:

> RFP 77: A high-level balance sheet from Federal Express Corporation for fiscal years 2025 and 2026. The balance sheet should include, but not be limited to, total revenues, total expenses, and profits. Preferably, expenses should be divided between variable and fixed costs.
>
> RFP 78: If FedEx Express maintains a separate high-level balance sheet from Federal Express Corporation, a high-level balance sheet from FedEx Express for fiscal years 2025 and 2026. The balance sheet should include, but not be limited to, total revenues, total expenses, and profits. Preferably, expenses should be divided between variable and fixed costs.

---

[1] Plaintiffs clarify that "FedEx Express" is not a typo and "Express" is a subgroup or subdivision of "FedEx" generally. Sur-Reply (Dkt. 76) at 5 n.16.

[2] Plaintiffs state that the FedEx Driver worked at the FedEx Express location in Garden City, Kansas. *Id.*

RFP 79: A high level balance sheet for the Garden City station for fiscal years 2025 and 2026. The balance sheet should include, but not be limited to, total revenues, total expenses, and profits. Preferably, expenses should be divided between variable and fixed costs.

RFP 80: Documents sufficient to show the profits for FedEx Express for each fiscal year from 2019 through 2025.

RFP 81: Documents sufficient to show the profits for the Garden City, Kansas station for each fiscal year from 2019 through 2025.

RFP 82: Documents sufficient to show how FedEx Express determines its net profits.

RFP 83: Documents sufficient to show how Federal Express determines its net profits.

RFP 84 : Documents sufficient to show the vertical integration from the Garden City, Kansas station to the top of Federal Express Corporation.[3]

On January 15, 2026, Plaintiffs served their third set of RFPs on Defendant. It consisted of

RFP 89, which asks Defendant to produce:

For each year from 2019 through 2025, provide the three financial documents or statements identified below for the Garden City Federal Express location or hub:

a. a detailed balance sheet;

b. a detailed income statement with variable and fixed expenses that should be clearly identified in the income statement. If a particular expense is a semi-variable (or semi-fixed) expense, please provide the fixed portion of the expense along with the variable rate identified on a per-unit basis or by some other unit identified as the measurement; and

c. a statement of cash flows.

To be clear, all three types of documents requested above are for the Garden City Federal Express location where [FedEx Driver] was employed, and the requests are

---

[3] Def.'s Resps. & Objs. to Second Set of RFPs (Dkt. 62-2) at 3–8.

for documents from 2019 through 2025.[4]

Defendant served its responses and objections to Plaintiffs' second set of RFPs on February 9, 2026[5] and the third set of RFPs on February 16, 2026.[6] It objected to all the disputed RFPs as premature because they seek financial information relevant only to a punitive damages claim and Plaintiffs have failed to prove that their claim for punitive damages is not spurious. Defendant further objected that Plaintiffs have not established malicious intent or reckless indifference required to assert punitive damages and Plaintiffs' punitive damages claims lack merit and are not supported by requisite evidence. For RFPs 80 and 81 seeking financial information for "each fiscal year from 2019 through 2025" and RFPs 82 and 83 seeking documents showing how net profits are determined, Defendant also objected to those RFPs as overly broad and unduly burdensome, not relevant in time or scope, and not relevant to any claim or defense.

On March 6, 2026, the Court entered an order (Dkt. 51) extending Defendant's deadline to supplement some of its discovery responses. In that Order, the Court reminded Defendant that "there is a viable punitive damages claim in this case and, unless there is a legitimate basis for withholding any relevant discovery, Defendant should review the discovery requests again and truly determine the basis for any objection. Also, Defendant shall review and supplement their responses to Plaintiffs' Requests for Production no later than 3/20/2026. The parties are strongly

---

[4] Def.'s Resps. & Objs. to Third Set of RFPs (Dkt. 62-2) at 12–14.

[5] Def.'s Resps. & Objs. to Second Set of RFPs (Dkt. 62-2) at 3–11.

[6] Def.'s Resps. & Objs. to Third Set of RFPs (Dkt. 62-2) at 12–14.

encouraged to continue to confer."[7] The Court also set a discovery conference in the event an impasse still remains.

On March 31, 2026, the Court held a pre-motion discovery conference on three discovery disputes raised by the parties, including Defendant's objections to Plaintiffs' requests for discovery relevant to the issue of punitive damages.[8] After hearing the parties' arguments on whether Plaintiffs' claim for punitive damages is spurious, the Court set an April 15, 2026 deadline for Defendant to file any motion for protective order related to its objections.[9] Defendant timely filed its motion for protective order. On July 6, 2026, the Court *sua sponte* entered a text Order (Dkt. 75) granting Plaintiffs leave to file a sur-reply that responded to three arguments Defendant raised for the first time in its Defendant's reply (Dkt. 66). Those arguments were: (1) punitive damages are not legally viable and recoverable in this wrongful death case, (2) the discovery requests at issue are overly broad and unduly burdensome, and (3) the Court should delay any document production until after a ruling on Defendant's forthcoming dispositive motion on punitive damages. Plaintiffs filed their Sur-Reply (Dkt. 76) on July 9, 2026.

## II.      Legal Standards

Under Federal Rule of Civil Procedure 26(c)(1), a party from whom discovery is sought may move for a protective order. The court may, for good cause, issue such protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

---

[7] Order (Dkt. 51).

[8] Disc. Conf. Order (Dkt. 59).

[9] *Id*.

expense."[10] Rule 26(c)(1)(A)-(H) outlines a number of non-exclusive ways in which the court may tailor a protective order, including forbidding the discovery, "forbidding inquiry into certain matters, or limiting the scope of [] discovery to certain matters."[11] Rule 26(c)'s "good cause" standard is "highly flexible, having been designed to accommodate all relevant interests as they arise."[12] The party seeking a protective order bears the burden to demonstrate good cause for protection. To establish good cause, the moving party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[13] The Supreme Court acknowledges trial courts are "in the best position to weigh the fairly competing needs and interests of the parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."[14]

## III.    Summary of the Parties' Arguments

Defendant requests the Court enter a protective order that essentially sustains its objections to Plaintiffs' RFPs 77–84 and 89 and relieves it from producing the financial statements and information sought by those discovery requests. In support of its motion, Defendant argues Plaintiffs have not presented sufficient allegations and credible evidence to show their claim for punitive damages is not spurious under the applicable law or established that punitive damages are

---

[10] Fed. R. Civ. P. 26(c)(1).

[11] Fed. R. Civ. P. 26(c)(1)(A) and (D).

[12] *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008) (citation omitted).

[13] *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).

[14] *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, (1984).

legally viable in this case. Defendant also argues the RFPs that seek financial records for the last six years are overly broad and unduly burdensome, as only the current information of a party's net worth or financial condition is relevant to a punitive damages calculation. In the alternative, if the Court determines that some financial information is discoverable, Defendant asks the Court to stay production of this discovery until after a ruling on its forthcoming motion for summary judgment on the punitive damages claim. Defendant requests any permitted discovery be narrowly confined to the specific inquiry at issue and within a reasonable timeframe in relation to the injury giving rise to this action.

Plaintiffs argue their claim for punitive damages is legally viable as part of the survival action, supported by sufficient allegations and evidence, and is not spurious under the applicable standard to warrant discovery of Defendant's financial condition. They also argue the Court should overrule Defendant's overbroad and unduly burdensome objections to RFPs 80–83 because they are appropriately limited to the years of the FedEx Driver's employment. Finally, Plaintiffs ask that the Court not further delay or postpone production of the discovery allowed. They ask that the Court order Defendant to produce the requested documents within seven days and before the deposition of Defendant's corporate representative, which is currently scheduled for August 5, 2026.

## IV.    Whether Plaintiffs Have Met the Applicable Standard to Obtain Discovery of Defendant's Financial Condition

Defendant argues Plaintiffs have not presented sufficient allegations and credible evidence to support that their claim for punitive damages is not spurious under the applicable law. It contends Plaintiffs' allegations forming the basis for their punitive damages claim—that Defendant's driver had a pattern and practice of driving recklessly in the FedEx van—are

unsubstantiated, meritless, and unsupported by any significant evidence. It argues that no credible witness testimony supports Plaintiffs' allegations, citing excerpts of deposition testimony by three fact witnesses denying they ever saw the driver speed or drive recklessly in the FedEx van.

In response, Plaintiffs contend Defendant's arguments are based on the wrong standard for this discovery dispute. Plaintiffs argue under the law of this District, the Court only looks at the allegations of the Amended Complaint to find the punitive damage claim is not spurious and Plaintiffs are not required to make a *prima facie* showing of the merits of the claim. They contend that the allegations in their Amended Complaint are enough to successfully support their claim for punitive damages, pointing out that the previous Magistrate Judge assigned to this case has already stated Plaintiffs have a viable punitive damages claim.

The Court agrees with Plaintiffs that Defendant's arguments suggest Plaintiffs have a higher burden than what is required in this District for this discovery dispute. Defendant argues in its motion that no credible witness testimony supports Plaintiffs' allegations that the FedEx Driver has a pattern and practice of driving recklessly, discrediting the deposition testimony of three witnesses.[15] In its reply, Defendant argues "Plaintiffs still must make a *prima facie* case showing that such damages are warranted/not-spurious before obtaining extremely sensitive financial discovery,"[16] and suggests that Plaintiffs must establish "by clear and convincing evidence" that that they would be entitled to punitive damages under the applicable Kansas statute for punitive

---

[15] Mot. (Dkt. 60) at 4–5. Although its arguments do not apply it, Defendant does cite District of Kansas law that the allegations necessary to determine whether plaintiffs' punitive damages claim is spurious are "short of those needed to establish a *prima facie* case." *Id*. at 3.

[16] Reply (Dkt. 66) at 3.

damages, K.S.A. § 60-3702. It argues for the survival claim there is "no clear evidence that the decedent experienced conscious pain and suffering."[17] Defendant's arguments thus appear based on what Kansas substantive law requires to <u>award</u> punitive damages and not the federal procedural law in the District of Kansas governing the scope of discovery allowed as relevant to the punitive damages claim.

When a federal court sits in diversity jurisdiction, as is the case here, federal procedural law governs the scope of discovery.[18] Under the federal procedural law in this District, information about a defendant's net worth or financial condition is relevant because it can be considered in determining punitive damages.[19] "When a punitive damages claim has been asserted by the plaintiff, a majority of federal courts permit pretrial discovery of financial information of the defendant without requiring plaintiff to establish a *prima facie* case on the issue of punitive damages."[20] Knowledge of a defendant's net worth will be of value to both sides in making a realistic appraisal of the case, and may lead to settlement and avoid protracted litigation.[21] But a

---

[17] *Id.*

[18] *See Stormont-Vail Healthcare, Inc. v. BioMedix Vascular Sols., Inc.*, No. 11-4093-SAC, 2012 WL 884926, at *1 (D. Kan. Mar. 14, 2012) ("Absent any conflicting constitutional requirements, federal statutes or Federal Rules of Civil Procedure, a federal district court sitting in diversity applies federal procedural law and state substantive law.") (quoting *Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1203 (10th Cir. 2012)); *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.,* 130 F.R.D. 149, 151 (D. Kan. 1990) ("[D]iscovery is a procedural matter that is governed in federal court by the Federal Rules of Civil Procedure.").

[19] *Mid Continent Cabinetry,* 130 F.R.D. at 151. *See also Koel v. Citizens Med. Ctr., Inc.*, No. 2:21-CV-02166-HLT-TJJ, 2023 WL 315030, at *2 (D. Kan. Jan. 19, 2023) ("Generally, information about a party's current net worth or financial condition is relevant to the issue of punitive damages.").

[20] *Mid Continent Cabinetry,* 130 F.R.D. at 151.

[21] *Id*.

plaintiff seeking discovery of the defendant's financial condition in support of a claim for punitive damages must show the claim is not spurious.[22] To prove a claim is not spurious, a party must provide specific factual allegations to support its claim for punitive damages.[23] In determining whether a plaintiff's punitive damages claim is spurious, the court looks to whether the plaintiff has made sufficient allegations—short of those needed to establish a *prima facie* case—to support a claim for punitive damages under the applicable law.[24] In *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, the court expressed its rationale for this standard:

> To require a *prima facie* showing of entitlement to punitive damages [] before the completion of discovery could also be quite difficult for the plaintiff and would not be logical since the very purpose of discovery is to locate evidence to support a punitive damages claim. Furthermore, to deny discovery of net worth until plaintiff can make a showing of a *prima facie* case at trial would only lead to delay and confusion while plaintiff reviews the information for the first time.[25]

The Court applies these standards in reviewing the Amended Complaint (Dkt. 9) to determine whether Plaintiffs' claim for punitive damages against Defendant in this case is spurious. This requires the Court to consider whether Plaintiffs have made sufficient factual *allegations,* short of those needed to "establish a *prima facie* case," to support their claim for punitive damages under Kansas law.

In this case, Plaintiffs are seeking punitive damages against Defendant under K.S.A. § 60-

---

[22] *Id*.

[23] *Clear Spring Prop. & Cas. Co. v. Arch Nemesis, LLC*, No. 22-CV-2435-DDC-TJJ, 2024 WL 4134846, at *3 (D. Kan. Sept. 10, 2024).

[24] *Koel*, 2023 WL 315030, at *3.

[25] 130 F.R.D. at 152.

3701[26] based on its alleged "willful and wanton conduct in allowing and encouraging their drivers, including [FedEx Driver], to create unsafe and dangerous road conditions by speeding and ignoring traffic rules."[27]  In Count III of their Amended Complaint, Plaintiffs allege that Defendant knew that FedEx Driver had a pattern and practice of speeding and reckless driving, and continued to allow him to operate the van despite knowing this.[28] Plaintiffs further allege Defendant's "decision to allow [FedEx Driver] to continue operating the FedEx Van amounts to willful and wanton conduct, showing a reckless disregard for the consequences of FedEx's actions and inactions," and Defendant's "lack of supervision or failure to correct and remove him from the road constitutes willful and wanton supervision."[29]  Finally, Plaintiffs allege the driver's "habitual speeding and reckless driving comports with [Defendant's] overall business model, which emphasizes speed at the cost of safety."[30]

Based on these specific factual allegations regarding Defendant's alleged willful and wanton conduct, the Court finds Plaintiffs have made a sufficient showing to establish their punitive damages claim is not spurious, and thus met the threshold requirements for discovery of Defendant's financial condition.

---

[26] *See* K.S.A. 60-3701(c) ("In any civil action where claims for exemplary or punitive damages are included, the plaintiff shall have the burden of proving, by clear and convincing evidence in the initial phase of the trial, that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice.").

[27] Am. Compl. (Dkt. 9) at ¶ 124.

[28] *Id*. at ¶¶ 117–18.

[29] *Id*. at ¶¶ 119 and 122.

[30] *Id*. at ¶ 123.

In connection with its spurious argument, Defendant also raise a potentially dispositive issue regarding whether Plaintiffs' claim for punitive damages are legally viable and recoverable in this case. The Court need not decide this issue here in the context of a discovery motion. The parties appear to agree that while punitive damages are not recoverable under the Kansas wrongful death statutes, they are available in a survival action.[31] Plaintiffs bring claims as both a wrongful death action and a survival action so this would not be a reason to deny them the opportunity to obtain discovery relevant to their claim for punitive damages. To the extent Defendant argues Plaintiffs will not be able to recover punitive damages on the survival action, for purposes of showing the punitive damages claim is not spurious and discovery allowed, Plaintiffs need only provide sufficient allegations of a survival claim. Plaintiffs allege Ms. Peters "survived the crash and suffered conscious physical and emotional pain and suffering."[32] This is enough. Plaintiffs' allegations are sufficient to establish their claim for punitive damages in the survival action is not spurious. Plaintiffs are entitled to discovery of Defendant's financial condition relevant to their punitive damages claim.

## V.        Overbroad and Unduly Burdensome Objections

Defendant next argues that even if the Court finds Plaintiffs punitive damages claim is not spurious, Plaintiffs' discovery requests are still overbroad and unduly burdensome and should be prohibited under Fed. R. Civ. P. 26. It complains that some of Plaintiffs' RFPs seek unfettered

---

[31] *See* Pls.' Sur-reply (Dkt. 67) at 2. ("In Kansas, punitive damages are not recoverable for wrongful death claims; they are only available if the decedent experienced conscious pain and suffering, i.e., a survival claim") (citing *Smith v. Printup*, 254 Kan. 315, 333–35, 866 P.2d 985, 998–99 (1993)).

[32] Am. Compl. at ¶ 98.

access to Defendant's confidential and proprietary financial records from the six-year time period 2019 through 2025. Instead of seeking information about profits attributable to the alleged conduct, Plaintiffs demand sweeping corporate-wide and location specific financial materials, including balance sheets, income statements, cash flow, profits (and how they are determined), and vertical integration documents. Such requests bear no reasonable relationship to calculation of punitive damages; instead they shift focus to discover to whether Defendant can pay the damages should punitive damages be awarded.

Plaintiffs argue the financial documents sought from Defendant are relevant and custom-tailored to the scope of the case and the Court should overrule Defendant's boilerplate objections that the requests are overbroad and unduly burdensome. According to Plaintiffs, the RFPs at issue require Defendant to produce two types of financial documents: (1) those showing profits and losses during the time the driver was employed by Defendant; and (2) those showing how Defendant determines its profits and losses.

In general, only the current information of a party's net worth or financial condition relevant to the issue of punitive damages.[33] "[M]ultiple cases in this District have limited the scope of discoverable financial information relevant to the issue of punitive damages to the defendant's most recent annual reports and current financial statements."[34] For example, in *Accountable*

---

[33] *McCloud v. Bd. of Geary Cnty. Comm'rs*, No. 06-1002-MLB-DWB, 2008 WL 1743444, at *4 (D. Kan. Apr. 11, 2008); *Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 625962, at *4 (D. Kan. Oct. 5, 1995).

[34] *Gray v. Conner Indus., Inc.*, No. 20-1037-TC-GEB, 2021 WL 5298667, at *7 (D. Kan. Nov. 15, 2021) (quoting *Accountable Health Sols., LLC v. Wellness Corp. Sols., LLC*, No. 16-CV-2494-DDC-TJJ, 2017 WL 3229071, at *4 (D. Kan. July 31, 2017)).

13

*Health Sols., LLC v. Wellness Corp. Sols., LLC*, the court limited the production of the defendant's financial condition to the "one-year period prior to the date Defendant produce[d] such information."[35]

Defendant objected to RFPs 80–83 as overly broad and unduly burdensome, not relevant in time or scope, and not relevant to any claim or defense. RFPs 80 and 81 seek financial information for "each fiscal year from 2019 through 2025" and RFPs 82 and 83 seek documents showing how net profits are determined.

The Court sustains Defendant's overly broad objections to RFPs 80–83.[36] Defendant has persuaded the Court that only the most current information about its financial condition is relevant to a punitive damages calculation. The Court therefore limits Plaintiffs' RFPs 80–83 to the fiscal year 2025. Defendant shall produce documents responsive to Plaintiffs' RFPs 80–83 but limited to the fiscal year 2025.

RFP 89 also requests financial documents or statements for each year from 2019 and 2025, but Defendant did not assert any overly broad and unduly burdensome objection in its response to this discovery request. Defendant also did not assert any overly broad and unduly burdensome objections to RFPs 77–79, or 84.[37] Therefore, Defendant shall produce all documents responsive

---

[35] 2017 WL 3229071, at *4.

[36] Plaintiffs also argue that Defendant did not raise these objections in the meet-and-confers or at the discovery conference with the Court. Although the parties focused their discovery conference arguments on whether Plaintiffs' punitive damages claim was spurious, the Court finds Defendant did not waive its overly broad and unduly burdensome objections to the RFPs in dispute.

[37] In any event, RFPs 77–79 appear reasonably limited by their own terms to financial statement for the fiscal years 2025 and 2026. RFP 84 does not request financial statements but instead vertical integration documents.

14

to Plaintiffs' RFPs 77–79, 84, and 89 without any limitation.

## VI.     Defendant's Request to Delay Production

Defendant alternately asks the Court to postpone or delay document production until after a ruling on the dispositive motion it intends to file regarding punitive damages. It argues allowing this premature financial discovery before establishing liability for punitive damages wastes judicial resources and subjects it to unnecessary burden, particularly when the punitive damages claim may be dismissed on legal grounds such as failure to meet the high malice/willful misconduct standard.

Plaintiffs argue the Court should not delay production of Defendant's financial documents until after a dispositive motion ruling on punitive damages. They point out that Magistrate Judge Birzer has already stated that Plaintiffs have a viable punitive damages claim *in this case*. Plaintiffs urge the Court to follow *Gray v. Conner Industries*,[38] where Judge Birzer also refused a similar request to delay the production of the defendant's financial documents until after a ruling on a dispositive motion.

Plaintiffs have convinced the Court that it should not delay Defendant's production of the requested relevant financial documents. This would in effect bifurcate discovery and hinder Rule 1's principles of speed and efficiency. As Plaintiffs point out, if the Court delays production until after a dispositive ruling, and the punitive damage claim survives, the parties will have to reopen discovery, likely requiring another trial continuance. The deposition of Defendant's corporate representative is set for August 5, 2026, and that deposition might need to be reopened. However, if the Court orders production and the punitive damage claim is later dismissed, the case will

---

[38] *Gray*, 2021 WL 5298667, at *7.

remain on schedule. Accordingly, the Court will not delay production of the requested financial information until after the Court rules on Defendant's forthcoming dispositive motion concerning Plaintiffs' claim for punitive damages. Defendant shall produce the requested discovery, as limited herein, **within 14 days of this Order**.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Protective Order (Dkt. 60) is **granted in part and denied in part.**

**IT IS FURTHER ORDERED** that Defendant shall produce all documents responsive to Plaintiffs' RFPs 77–84, and 89, but RFPs 80–83 are limited to the fiscal year 2025. Defendant shall produce this discovery **within 14 days** of the date of this Order.

**IT IS SO ORDERED.**

Dated July 17, 2026, at Kansas City, Kansas.

Jennifer B. Wieland
U. S. Magistrate Judge